**Contains In Camera Material Subject to Protective Order**

# Plaintiff's Opening Statement

*Federal Trade Commission*

*v.*

*Peabody Energy Corporation, et. al.*

July 14, 2020



PDX0011-001

# The FTC's Case

- Competition between SPRB coal suppliers impacts the price that power producers pay for SPRB coal

- Head-to-head competition between Peabody and Arch is particularly important

- If the JV eliminates head-to-head competition between Peabody and Arch, it is probable that SPRB coal prices will rise compared to the but-for world in which competition continues

PDX0011-002

# SPRB Coal Competition Impacts Prices



PDX0011-003

# Defendants' Head-to-Head Competition Matters



PDX0011-004

# Southern Powder River Basin Coal



PDX0011-005

# Power Producers Rely on SPRB Coal

- Distinct & Attractive Characteristics

- Key in large regions of the country: 60% or more of net generation in Missouri

- 267 million tons of SPRB coal were sold in 2019

PDX0011-006

2030:  197.3

# Power Producers Will Rely on SPRB Coal for Many Years

March 2020 Peabody projection for SPRB coal supply in 2024: ██████████

██████████

EIA projects SPRB coal supply in 2030: **197.3 million tons**

PDX0011-007

# Peabody Leads the SPRB



## Peabody – Leader in Powder River Basin

- Operates flagship North Antelope Rochelle Mine – World's largest coal mine
- Ability to optimize equipment and resources among Peabody mines
- Well-positioned on joint line

Buckskin
Rawhide
Dry Fork
BN
Eagle Butte

Caballo
Belle Ayr
Cordero Rojo
Coal Creek

Joint BN-UP

Black Thunder
North Antelope Rochelle
Antelope

Legend:
- Peabody
- Arch
- Cloud Peak
- Contura
- Other

**Peabody**

29

PDX0011-008



Source:

9

# 2019 Production Volume by SPRB Mine



PDX0011-010

# Peabody Leads the SPRB



March 2017 Investor Presentation

# Legal Framework



PDX0011-012

# Preliminary Injunction Standard

"The only question addressed to this court is whether the status quo is to be preserved until the FTC completes its adjudicatory function."

*FTC v. Sanford Health*, 2017 WL 10810016 at *23 (D.N.D. Dec. 15, 2017); *aff'd* 926 F.3d 959 (8th Cir. 2019).

Injunction proper where the FTC's evidence "rais[es] questions going to the merits so serious, substantial, difficult and doubtful as to make them fair ground for thorough investigation, study, deliberation and determination by the FTC in the first instance."

*FTC v. Tenet Health Care Corp.*, 186 F.3d 1045, 1051 (8th Cir. 1999) (quotation omitted).

13

PDX0011-013

## The Merits Question: What is the Probable Effect of the JV?

The Clayton Act prohibits transactions where the effect "may be substantially to lessen competition." *15 U.S.C. § 18.*

"Congress used the words *may be . . .* to indicate that its concerns were with probabilities, not certainties."

*Brown Shoe Co., Inc. v. United States*, 370 U.S. 294, 323 (1962).

## Presumption-Based Framework

"[A] merger which produces a firm controlling an undue percentage share of the relevant market, and results in a significant increase in the concentration of firms in that market, is so inherently likely to lessen competition substantially that it must be enjoined in the absence" of contrary evidence.

*United States v. Philadelphia Nat. Bank*, 374 U.S. 321, 363 (1963). *See also FTC v. Sanford Health*, 926 F.3d 959, 963 (8th Cir. 2019).

PDX0011-015

# Thresholds for Presumption of Anticompetitive Effect

The Horizontal Merger Guidelines presume anticompetitive effects if the Herfindahl-Hirschman Index ("HHI") increases by more than 200 points, to a level of 2500 or more.

*Merger Guidelines* §§ 2.1.3; 5.3.

"In *Philadelphia National Bank*, the Court specifically held that a post-merger market share of thirty percent triggers the presumption."

*FTC v. Swedish Match*, 131 F. Supp. 2d 151, 166 (D.D.C. 2000).

## Defendants Will Not Rebut the Presumption Because SPRB Coal Shares Reflect Competitive Importance

Defendants will not present evidence showing that "'the market-share statistics [give] an inaccurate account of the [JV's] probable effects' on competition."

*FTC v. H.J. Heinz Co.*, 246 F.3d 708, 715 (D.C. Cir. 2001) (quoting *United States v. Citizens & Southern Nat'l Bank*, 422 U.S. 86, 120 (1975)).

## Defendants' Arguments Cannot Explain the Evidence of SPRB Coal-on-Coal Competition

Low Natural Gas Prices, Renewables Mandates, and Coal Plant Retirements Are Already Happening

Yet SPRB Coal-on-Coal Competition Remains The Most Important Driver of Prices

PDX0011-018

# SPRB Coal-on-Coal Competition Drives Pricing



PDX0011-019

# Defendants' RFP Bids Impact Each Other



PDX0011-020

# Customers Confirm that Defendants are Often Their Two Best Options



## Evidence Shows that Market Shares Accurately Reflect Defendants' Competitive Importance

"In further support of th[e] presumption, there is clear evidence that the proposed merger would eliminate valuable head-to-head competition between two close rivals."

*United States v. Aetna, Inc.*, 240 F. Supp. 3d 1, 74 (D.D.C. 2017).

"There can be little doubt that the acquisition of the second largest firm in the market by the largest firm in the market will tend to harm competition in that market."

*FTC v. Staples, Inc.*, 190 F. Supp. 3d 100, 138 (D.D.C. 2016).

PDX0011-022

## The JV's Probable Effect Compared to the But-For World

"[T]he FTC has shown that the merger will result in the loss of a proven strategy—the ability to leverage one large, global supplier against another—that appears to be the most effective price constraint."

*FTC v. Wilh. Wilhelmsen Holding ASA*, 341 F. Supp. 3d 27, 71 (D.D.C. 2018).

Absent continued competition among the defendants, "the prices set today could in effect become the floor tomorrow."

*FTC v. Cardinal Health,* 12 F. Supp. 2d 34, 64-65 (D.D.C. 1998).

23

# The Relevant Product Market Is SPRB Coal



PDX0011-024

## The Narrowest Market Principle

"Relevant market analysis is based on the narrowest market principle. The analysis begins by examining the most narrowly-defined product or group of products sold by the merging firms to ascertain if the evidence and data support the conclusion that this product or group of products constitutes a relevant market."

*FTC v. Arch Coal*, 329 F. Supp. 2d 109, 120 (D.D.C. 2004) (emphasis added, quotation and citation omitted).

25

## *Brown Shoe* Factors Identify "submarkets"

"[W]ithin this broad market, well-defined submarkets may exist which, in themselves, constitute product markets for antitrust purposes."

*Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962); *United States v. Continental Can Co.,* 378 U.S. 441, 457-458 (1964); *Henry v. Chloride, Inc.,* 809 F.2d 1334, 1342 (8th Cir.1987) (listing *Brown Shoe* factors); *see also Se. Missouri Hosp. v. C.R. Bard, Inc.,* 642 F.3d 608, 614 (8th Cir. 2011).

26

# Would a Small Price Increase be Profitable?



PDX0011-027

# The Hypothetical Monopolist Test



PDX0011-028

# Hypothetical Monopolist Test: Illustrative Example

**Competitive Prices**

Price = $100
Cost = $99
Margin = $1
**Sales = 100 units**
**Profit = $100**

**5% Price Increase ("SSNIP")**

Price = $105
Cost = $99
Margin = $6
**Sales = 50 units**
**Profit = $300**

PDX0011-029

# Geographic Market



PDX0011-030

## Geographic Market

Power producers buy SPRB Coal "f.o.b." at the mine mouth

When customers receive goods at the suppliers' locations, as with SPRB coal, the relevant geographic market is usually based on the locations of suppliers.

*Merger Guidelines* § 4.2.1.

"[B]ecause the relevant product market is defined in geographic terms as SPRB coal, which is produced and sold in that region, the product market and geographic market analysis are really the same."

*FTC v. Arch Coal*, 329 F. Supp. 2d 109, 123 (D.D.C. 2004).

31

# The JV is Presumptively Anticompetitive



PDX0011-032

# The JV is Presumptively Anticompetitive



Defendants' production

Broken down by individual mine

# SPRB Coal Market Shares are Not Disputed



PDX0011-034

# SPRB Coal Market Shares are Not Disputed



PDX0011-035

# SPRB Coal Market Shares are Not Disputed



PDX0011-036

# The JV is Presumptively Anticompetitive



# Market Concentration Consistent with Other Proposed Combinations Courts Have Enjoined

| Case | Combined Share | Post-Merger HHI | Holding |
|---|---|---|---|
| Cardinal Health (D.D.C. 1998) | 37-40% | 3,079 | Enjoined |
| Swedish Match (D.D.C. 2000) | 60% | 4,733 | Enjoined |
| Heinz (D.C. Cir. 2001) | 32.8% | 5,285 | Enjoined |
| H&R Block (D.D.C. 2011) | 28.4% | 4,691 | Enjoined |
| Sysco (D.D.C. 2015) | 75% | 5,836 | Enjoined |
| Staples II (D.D.C. 2016) | 79% | 6,265 | Enjoined |
| Wilhelmsen (D.D.C. 2018) | 84.7% | 7,214 | Enjoined |
| Tronox (D.D.C. 2018) | 38% | >3,000 | Enjoined |
| **Peabody (E.D. Mo. 2020)** | ██████ | ██████ | **TBD** |

PDX0011-038

# Defendants Cannot Rebut the Presumption



PDX0011-039

## SPRB Coal Suppliers Are the Closest Constraint on SPRB Prices

Defendants claim:



In Defendants' **own example**, competition from Peabody determined the price the customer paid.

# SPRB Coal-on-Coal Competition is the Closest Constraint on SPRB Coal Suppliers' RFP Bids



PDX0011-041

# Negotiations with Customers, not Natural Gas, Determine SPRB Coal Prices



PDX0011-042

# Plant Retirements Do Not Determine SPRB Coal Prices



PDX0011-043

# Peabody Does Not Consider its Plant Retirement Analysis In Setting Prices



See

PDX0011-044

## Defendants Will Not Show Entry or Expansion Will Reverse the JV's Anticompetitive Effects

Defendants cannot meet their burden to show that *timely* entry and expansion will contain the anticompetitive effects of the JV



# Defendants Will Not Show "Efficiencies" Will Reverse Anticompetitive Effects

Defendants' publicly claimed efficiencies are overstated

Defendants will not establish legal requirements for their claimed efficiencies

- Claimed efficiencies not likely to be "passed on to consumers," *FTC v. Penn State Hershey Med. Ctr.*, 838 F.3d 327, 351 (3d Cir. 2016)
- Efficiencies are not verifiable
- Many of the claimed efficiencies could be achieved through less anticompetitive means – not "merger-specific"

46

PDX0011-046

# A Temporary $0.15 Discount Is Meaningless

Evidence "deemed of limited value whenever such evidence *could arguably* be subject to manipulation."

*Chicago Bridge & Iron Co. N.V. v. FTC*, 534 F.3d 410, 435 (5th Cir. 2008). *See also Hosp. Corp. of Am. v. FTC*, 807 F.2d 1381, 1384 (7th Cir. 1986).

Defendant's action "was a strategy to improve its litigation position" and thus "weak evidence of its future behavior."

*United States v. Aetna Inc.,* 240 F. Supp. 3d 1, 88 (D.D.C. 2017).

PDX0011-047

# Equities



PDX0011-048

## Preliminary Injunction Is in the Public Interest

Dr. Hill's Estimate of Present value of aggregate predicted harm to customers in the declining demand Cournot model (in million US$)



See PX8001 (Hill Report) Figure 34

49

## Preliminary Injunction Shall Issue if in the Public Interest

The FTC is likely to demonstrate in the administrative proceeding that effect of the merger "may be substantially to lessen competition."

"[E]ffective enforcement of the antitrust laws was Congress's specific public equity consideration in enacting Section 13(b)."

*FTC v. CCC Holdings*, 605 F. Supp. 2d 26, 35 (D.D.C. 2009).

# **Witnesses**



PDX0011-051

# FTC Witnesses

## Customer Witnesses

- Andrew Meyer: Ameren Missouri
- Jeffrey Jones: Ameren Missouri
- Eric Peterson: Evergy (Kansas City Power & Light)
- Gary Ruhl: Omaha Public Power District
- Craig Romer: XCEL Energy
- Kathy Benham: ALLETE, Inc. (Minnesota Power)
- Meri Sandlin: Western Fuels Association
- Amy Jeffries: American Electric Power (video deposition)
- Bette Whalen: Lower Colorado River Authority (video deposition)

## Adverse Witnesses

- Rowdy Smith: Arch Senior Vice President, Domestic Thermal Coal Sales
- David James, Peabody Director of Sales & Marketing
- Michael Siebers, Peabody Senior Vice President, Sales & Marketing

# Witnesses Span Broad Region, Multiple RTOs/ISOs



# FTC Customer Witnesses



FTC Witnesses Purchase ▮▮▮ of SPRB Coal

PDX0011-054

# The FTC's Customer Testimony is Factual, Not Speculative

"Customers do not, of course, have the expertise to state what will happen in in the SPRB market."

*FTC v. Arch Coal*, 329 F. Supp. 2d 109, 146 (D.D.C. 2004).

"Customers do not have any particular expertise that allows them to speculate on the likely effect of a merger."

"Any speculation by customers on the likely anti-competitive effects of a proposed merger is likely to be no more than that – speculation."

John D. Bates, *Customer Testimony of Anticompetitive Effects in Merger Litigation*, 2005 Colum. Bus. L. Rev. 279, 286 (2005).

55

# Dr. Nicholas Hill: Industrial Organization Expert



- PhD, Economics
- Previously served in DOJ Antitrust Division, Assistant Section Chief
- Qualified as an expert in merger litigations

Dr. Hill's analysis is consistent with precedent:
- Defined an appropriate relevant market
- Calculated elasticities, implemented the HMT

Dr. Hill will explain:
- JV will significantly increase concentration
- Defendants are close competitors
- JV will likely result in higher prices

56

# Dr. Israel Offers No "Dynamic Model" That He Even Believes Himself



# Dr. Mark Zmijewski (Zme-yev'-ski):  Efficiencies



- PhD, Accounting
- Professor Emeritus at the University of Chicago Booth School of Business
- Qualified as an expert in merger litigations

Dr. Zmijewski will explain the JV's claimed efficiencies:

- Not verifiable
- Not merger-specific
- Have changed significantly

# The FTC's Case

- Competition between SPRB coal suppliers impacts the price that power producers pay for SPRB coal

- Head-to-head competition between Peabody and Arch is particularly important

- If the JV eliminates head-to-head competition between Peabody and Arch, it is *probable* that SPRB prices will rise compared to the but-for world in which competition continues

PDX0011-059